# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ELLENA MARIA TORRES KNOWLTON,

       Plaintiff,

v.                                        CIV 18-0194 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*) filed on August 6, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 6, 7, 8.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted in part.

## I.    Procedural History

On January 28, 2015, Ms. Ellena Maria Torres Knowlton ("Plaintiff") filed an application with the Social Security Administration for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Administrative Record[1] ("AR") at 137, 277-78. Plaintiff alleged a disability onset date of June 27, 2014. AR at 139. Disability

---

[1] Document 12 contains the sealed Administrative Record. *See Doc. 12-1 to 12-38.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Determination Services determined that Plaintiff was not disabled both initially (AR at 193, 137-58) and on reconsideration (AR at 198, 160-91). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of her application. AR at 204-05.

Both Plaintiff and a vocational expert ("VE") testified during the *de novo* hearing. *See* AR at 67-136. ALJ Stephen Gontis issued an unfavorable decision on June 22, 2017. AR at 11-28. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 275), which the Council denied on December 27, 2017 (AR at 1-4). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity ("RFC"), she is unable to

perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. § 404.1545(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[2] ALJ Gontis found that Plaintiff "has not engaged in substantial gainful activity since June 27, 2014, the alleged onset date." AR at 13 (citing 20 C.F.R. §§ 404.1571–1576). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: disease of circulatory system; affective disorders; posttraumatic stress disorder; and anxiety." AR at 14 (citing 20 C.F.R. § 404.1520(c)). The ALJ found that the following impairments are non-severe: diabetes mellitus, a fracture of a bone, adhesive capsulitis of the left shoulder, hyperlipidemia, hypertension, hearing loss, and attention deficit hyperactivity disorder. AR at 14.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

---

[2] The ALJ first found that "claimant's earning record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2018. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." AR at 11.

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." AR at 15 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ considered Listings 4.06 (symptomatic congenital heart disease) and 4.00 (cardiovascular system). AR at 15. With respect to Plaintiff's mental impairments, the ALJ further concluded that "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06 and 12.15." AR at 15. In making this determination, the ALJ found that Plaintiff has moderate limitations in all the broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. AR at 15-16. Because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation" the ALJ found that the paragraph B criteria are not satisfied. AR at 16; *see also* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.06(B). The ALJ also found that the evidence of record "fails to establish the presence of the 'paragraph C' criteria." AR at 16.

In determining Plaintiff's RFCs, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR at 18. The ALJ considered the evidence of record and Plaintiff's administrative hearing testimony, as well as the opinions of Plaintiff's treating physicians and treating counselors, the consultative physicians, and Plaintiff's friends. AR at 17-26. Ultimately, the ALJ found that, between June 27, 2014 and August 9, 2016, Plaintiff had the RFC to

lift and/or carry 20 pounds occasionally and 10 pounds frequently. She
could sit for 6 hours in an 8-hour workday with normal breaks. She could
stand and/or walk for 6 hours in an 8-hour workday with normal breaks. Her
ability to push and/or pull was only limited by her ability to lift and/or carry.
She could never climb ladders, ropes, or scaffolds. She could occasionally
balance, stoop, kneel, crouch and crawl. She could never work at
unprotected heights. She was limited to work involving the performance of
simple, routine tasks and simple work-related decisions. She could have
frequent interaction with supervisors and occasional interactions with
coworkers and the general public. Her time off task was accommodated by
normal breaks. [The ALJ found] that this was a limited range of work
contained in the **light** exertional level as defined by 20 C.F.R. [§] 404.1567
and SSR 83-10.

AR at 17 (emphasis added). He further found that, as of August 9, 2016, Plaintiff has the

RFC to

lift and/or carry 50 pounds occasionally and 25 pounds frequently. She can
sit for 6 hours in an 8-hour workday with normal breaks. She can stand
and/or walk for 6 hours in an 8-hour workday with normal breaks. Her ability
to push and/or pull is only limited by her ability to lift and/or carry. She can
never climb ladders, ropes, or scaffolds. She can occasionally balance,
stoop, kneel, crouch and crawl. She can never work at unprotected heights.
She is limited to work involving the performance of simple, routine tasks and
simple work-related decisions. She can have frequent interaction with
supervisors and occasional interaction with coworkers and the general
public. Her time off task can be accommodated by normal breaks. [The ALJ
found] that this is a limited range of work contained in the **medium**
exertional level as defined by 20 C.F.R. [§] 404.1156 and SSR 83-10.

AR at 23-34 (emphasis added).

At Step Four, ALJ Gontis found Plaintiff's past relevant work to include sales

person, furniture manager, head cashier, cashier/prep person, loan clerk, film machine

operator, material handler, and retail store manager. AR at 26. Based on testimony from

the VE, the ALJ concluded that "[f]rom the alleged onset date to the present, [Plaintiff]

has been capable of performing past relevant work as a film machine operator." AR at

26 (citing DOT 976.685-014).

Even though he determined Plaintiff could perform past relevant work, the ALJ made alternate Step Five findings. The VE testified that a person with Plaintiff's age, education, work experience, and initial RFC (for light work) could perform the duties of marker, photo copy machine operator, and bottle packager. AR at 27. The VE further testified that, in addition to those jobs, a person with Plaintiff's age, education, work experience and second RFC (for medium work) could perform the duties of cleaner II and laundry worker II. AR at 28. Based on this testimony, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR at 28.

The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, [since] June 27, 2014 . . . ." AR at 28 (citing 20 C.F.R. § 404.1520(f)).

## III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a

preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)).

The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.    Discussion

Plaintiff asserts three issues in her Motion. First, she argues that the Appeals Council erred in determining that the evidence submitted after the hearing did not constitute new, material, and chronologically pertinent evidence. *Doc 18* at 2. Second, Plaintiff contends that the ALJ erred by impermissibly picking and choosing between the "marked" and "moderate" limitations found by Administrative Non-Examiner Laura Lochner. *Id.* Third, Plaintiff alleges that the ALJ erred by improperly weighing the assessment of treating provider Joanne Rossi. *Id.*

**A.    The Appeals Council properly rejected additional evidence because Plaintiff failed to show good cause why she did not submit the evidence earlier.**

On May 12, 2017, ALJ Gontis held a hearing on Plaintiff's claim for DIB. AR at 69. The ALJ issued an unfavorable decision on June 22, 2017. AR at 28. Plaintiff submitted a request for review to the Appeals Council on August 4, 2017, and included evidence not previously submitted to the ALJ – specifically a neuropsychological evaluation by Barbara Koltuska-Haskin, Ph.D. AR at 275; *see also* AR at 60-66. The report listed four evaluation dates, but those dates were scratched off. AR at 60. Further, the report was missing three pages. AR at 62-63 (skipping from page 3 to page 7). On November 9, 2017, Plaintiff re-submitted the same neuropsychological evaluation to the Appeals Council, but this time submitted a complete copy of the report, which included evaluation dates of March 1, 2017, March 22, 2017, March 30, 3017, and April 6, 2017. AR at 49-59.

On December 27, 2017 the Appeals Council denied Plaintiff's request for review. AR at 1. In denying review, it explained that it did not consider the neuropsychological evaluation. AR at 2. It found that the undated, incomplete evaluation did not relate to the period at issue and that Plaintiff did not show good cause for why she missed informing the Social Security Administration about or submitting the dated, complete evaluation earlier. AR at 2.

Plaintiff now asserts that the Appeals Council erred in determining that the evaluation did not constitute new, material, and chronologically pertinent evidence. The Court disagrees, because Plaintiff's argument rests on the wrong legal standard. "Whether evidence qualifies for consideration [by the Appeals Council] is a question of law subject to de novo review." *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)).

A claimant applying for DIB must inform the Social Security Administration about all evidence or submit all evidence known to the claimant that relates to whether she is disabled. 20 C.F.R. § 404.1512(a). "This duty is ongoing and requires [the claimant] to disclose any additional related evidence which [she] become[s] aware," and applies "at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision." *Id.* Evidence required under Section 404.1512 must be submitted, or the ALJ must be informed about the evidence, no later than five business days before the scheduled hearing with the ALJ. 20 C.F.R. § 404.935(a).

If a claimant has additional evidence to submit after the ALJ has issued a decision, the Appeals Council will review the case if it receives such additional evidence "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). However, the SSA recently promulgated a new rule that "[t]he Appeals Council will only consider additional evidence . . . if [the claimant] show[s] good cause for not informing [SSA] about or submitting the evidence as described in § 404.935 . . . ." 20 C.F.R. § 404.970(b). The previous version of Section 404.970(b) did not include this good cause requirement – the claimant need only show that the evidence was new, material, and related to the period on or before the date of the ALJ hearing decision. 20 C.F.R. § 404.970(b) (effective to Jan. 16, 2017).[3]

_____

[3] The cases Plaintiff cites all address the new, material, and chronologically pertinent standard, without discussing the good cause standard, and are therefore inapplicable. *See Doc. 18* at 16-19.

The current "good cause" version of Section 404.970 became effective on January 17, 2017, but compliance was not required until May 1, 2017. *See* Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 FR 90987-01, 2016 WL 7242991 (Dec. 16, 2016). The Appeals Council explained that it applies "the laws, regulations and rulings in effect as of the date we took this action." AR at 1. In this case, the Appeals Council denied review on December 27, 2017 (AR at 1), meaning it applied the new version of Section 404.970. In *Potter v. Berryhill*, the United States District Court for the District of Kansas declined to apply the new version of the regulation to an Appeals Council denial issued May 8, 2017 because the new regulation was not in effect when the plaintiff requested the ALJ hearing, when the ALJ issued his decision, or when the plaintiff sought review from the Appeals Council. No. CIV 17-4050-JWL, 2018 WL 4052205, at *4-5 (D. Kan. Aug. 24, 2018). In this case, by contrast, the ALJ conducted his hearing on May 12, 2017, the ALJ issued his decision on June 22, 2017, and the Plaintiff submitted a request for review to the Appeals Council on August 4, 2017. Compliance with the now-effective regulation required Plaintiff to show good cause for failure to timely submit additional evidence to the ALJ, *see* 20 C.F.R. § 404.935 or to the Appeals Council, *see* 20 C.F.R. § 404.970. *See also Bisbee v. Berryhill*, No. 18-cv-0731 SMV, 2019 WL 1129459, at *3 n.4 (D.N.M. Mar. 12, 2019) (applying the new regulation to an Appeals Council decision issued June 7, 2018).

Yet Plaintiff failed to offer any explanation to the Appeal Council why she did not either submit the neuropsychological evaluation or inform the ALJ of the evaluation at least five business days before the May 12, 2017 hearing as required by Section

404.935(b). AR at 275, 49. The Court need not address whether the evaluation was new, material, and chronologically relevant, as Plaintiff did not pass the first hurdle of showing good cause for a delay in submitting the evidence.

In her reply brief, Plaintiff attempts to now offer a good cause reason, explaining that her current counsel did not represent her until after the hearing with the ALJ and that they forwarded the complete evaluation to the Appeals Council as soon as they received it. *Doc. 22* at 6. This explanation was not provided to the Appeals Council, and the Court will not now consider a *post hoc* explanation, *see Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004), or an explanation offered for the first time in a reply brief, *see Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005). Accordingly, the Appeals Council properly determined that Plaintiff had not shown good cause why she did not submit the evidence earlier and properly rejected the additional evidence.

> **B.** **The RFCs do not properly account for one of the limitations opined by Dr. Lochner.**

On March 21, 2016, Laura Lochner, Ph.D., provided a Mental Residual Functional Capacity Assessment ("MRFCA") opining, in part, that Plaintiff is markedly limited in her ability to interact appropriately with the general public and that she can relate to supervisors and peers on a superficial work basis. AR at 189. Plaintiff argues that although the ALJ gave significant weight to Dr. Lochner's opinion (AR at 22), the RFCs do not account for these limitations (*Doc. 18* at 20-21). She therefore argues that

the ALJ erred by impermissibly picking and choosing between marked and moderate limitations found by Dr. Lochner.[4]

Social Security Ruling 96-8P requires that "[t]he RFC assessment must always consider and address medical source opinions[,] . . . [and i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Maldonado v. Berryhill*, No. CIV 16-0392 KBM, 2017 WL 2491528, at *7 (D.N.M. Apr. 26, 2017) (citing SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). An ALJ cannot "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)); *see also Haga v. Astrue*, 482 F.3d 1205, 1209 (10th Cir. 2007).

### i. Interactions with the General Public

The RFCs both limit Plaintiff to occasional interactions with coworkers and the general public (AR at 17, 23-24), which Plaintiff asserts does not account for a marked limitation in her ability to interact appropriately with the general public. The Acting Commissioner first argues that "despite her earlier assignment of a 'marked' limitation in interacting appropriately with the general public, Dr. Lochner did not include any related limitation in the part of the form described as 'the actual mental [RFC] assessment'" including "the 'narrative discussions' describing each conclusion and the 'MRFC-Additional Explanation text box' at the end of the mental RFC section." *Doc. 20* at 10

---

[4] Plaintiff also alleges that Dr. Lochner found Plaintiff to be moderately limited in her ability to maintain attention and concentration for extended periods – a limitation that is also not incorporated into the RFCs. *Doc.* 18 at 20. Contrary to Plaintiff's allegations, however, Dr. Lochner actually opined that Plaintiff is not significantly limited in her ability to maintain attention and concentration for extended periods. AR at 188.

(citing AR at 188-89). True, the MRFCA form states that "the actual mental residual functional capacity assessment is recorded in the narrative discussion." AR at 188. The Tenth Circuit has further instructed courts to compare the ALJ's RFC findings to the MRFCA narrative, not to the notations of limitations in the earlier question portion of an assessment. *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016).

However, the Tenth Circuit has also held that an ALJ cannot rely solely on the limitations found in a narrative, ignoring limitations listed in the question section if the narrative not does adequately account for limitations opined in the earlier section. *Carver v. Colvin*, No. 16-CV-0689 SMV, 600 F. App'x 616, 619 (10th Cir. 2015). In such a situation, the MRFCA cannot properly be considered part of the substantial evidence supporting the ALJ's RFC finding." *Id.; see also Guinn v. Berryhill*, No 16-CV-0689 SMV, 2018 WL 626247, at *3 (D.N.M. Jan. 30, 2018). Here, Dr. Lochner's narrative discussion fails to describe or even mention any effect that the earlier-opined marked limitation has on her abilities. AR at 189. Indeed, the narrative provides no discussion of Plaintiff's ability to interact with the general public. Accordingly, the ALJ cannot rely only on the narrative and simply "turn a blind eye" to an opined marked limitation. *Carver*, 600 Fed. App'x at 619.

Thus, this Court must determine whether the RFC's limitation to occasional interactions with the general public accounts for Plaintiff's marked difficulty in her ability to interact appropriately with the general public. Magistrate Judge Wormuth of this District has held that "there is nothing so unique about marked limitations which *per se* prevents them from being incorporated into more generic limitations on categories of work." *Trujillo v. Berryhill*, CIV No. 16-851 GBW, 2017 WL 2799981, at *8 (D.N.M. June

23, 2017) (citing *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016)). In *Trujillo,*
Judge Wormuth examined whether the ALJ's RFC placed "significant limitations" to
"adequately reflect" the plaintiff's marked limitations. *Id.* at *9. There, he found that the
plaintiff's marked limitations in concentration and pace were properly incorporated into
her RFC which included "significant limitations" that "adequately reflect[ed]" restrictions
to "(i) simple, routine, and repetitive work tasks, involving simple one- and two-step work
instructions; (ii) performed in a routine, predictable and low stress environment with only
'occasional contact with supervisors and co-workers' and 'minimal to no contact with the
public.'").

        Here, the Court finds that simply limiting Plaintiff to occasional interactions with
coworkers and the general public does not constitute a significant limitation adequately
reflecting Plaintiff's marked limitation in interacting appropriately with the general public.
AR at 17, 23-24. In a very similar case, *Knight v. Colvin*, a doctor assessed the plaintiff
to have marked difficulty in her ability to interact with the public. No. CIV 15-0882 KBM,
2016 WL 9489144, at *2-3 (D.N.M. Dec. 5, 2016). The *Knight* ALJ gave great weight to
this opinion and incorporated it into the RFC by limiting the plaintiff to occasional
interactions with the public. *Id.* I found, however, that the ALJ properly accounted for the
marked limitation because the RFC also limited the plaintiff to ***unskilled*** work. *Id.* at *6.
Unskilled work "does not require *any* interaction with the general public," meaning that
"even if the ALJ's limitation of [p]laintiff to only occasional interaction . . . inadequately
addresses this marked limitation, the ALJ rectified this error by his further determination
that she be limited to unskilled work, which does not require this ability." *Id.* In contrast
here, the ALJ only limited Plaintiff to occasional interactions with the general public

without any additional limitations, such as a limitation to unskilled work; therefore, the RFC failed to adequately account for Plaintiff's marked limitation.

The Commissioner cites *Griffin v. Berryhill*, No. CIV 16-158 RAW/KEW, 2017 WL 3698502 (E.D. Okla. July 24, 2017) to support her position that a "marked" social interaction limitation does not require an RFC limitation to "never" perform a similar work-related interaction function. *Doc. 20* at 11. Yet, *Griffin* does not support the Commissioner's position. In *Griffin*, the plaintiff argued that his RFC was internally inconsistent because the RFC allowed him to occasionally understand, remember, and complete detailed instructions when he had marked limitations in that area. 2017 WL 3698502, at *3. The Court declined to accept this argument because the plaintiff conceded that the issue added nothing further to the Court's inquiry. *Id.* Further, the Court found any potential error to be harmless as the occupation identified by the ALJ did not require understanding, remembering, or completing detailed instructions. *Id.*

The Commissioner's reliance on *Maldonado*, 2017 WL 2491528, is also misplaced. In *Maldonado*, a consulting examiner assessed that the plaintiff had moderate to marked difficulty in his ability to interact with the public and co-workers; yet, the RFC included that the plaintiff could have occasional interactions with the public. *Id.* at *7. There, I assumed, without deciding, that the RFC conflicted with the marked limitation, but found that the ALJ provided a reason for deviating from the examiner's finding of a marked limitation. *Id.* at *7 & n.6. Here, on the other hand, the ALJ gave Dr. Lochner's opinion significant weight without any further comment as to which parts of Dr. Lochner's opinion he accepted or why he deviated from Dr. Lochner's opinion on

interactions with the general public. *See* AR at 22. "So it is simply unexplained why the ALJ adopted some of [the doctor's] restrictions but not others." *Haga*, 482 F.3d at 1208.

The Court shall remand on this issue with instructions for the ALJ to incorporate Dr. Lochner's finding of a marked limitation in ability to interact appropriately with the general public into Plaintiff's RFCs, or sufficiently explain why he rejected that opinion.

### ii. Relating to Supervisors on a Superficial Work Basis

Dr. Lochner further opined that Plaintiff "can relate to supervisors and peers on a superficial work basis." AR at 189. Plaintiff interpreted this statement to read that she can *only* relate to supervisors on a superficial work basis. *Doc. 18* at 20. Accordingly, she argues that the RFCs' assessment that she can have frequent interactions with supervisors is inconsistent. *Id.* at 20-21 (citing AR at 17, 23-24).

Even assuming that Plaintiff's interpretation is correct, the Court finds that the ALJ properly incorporated this limitation into the RFCs. In *Carver*, the Tenth Circuit held that while an ALJ did not verbatim repeat an MRFCA limitation of relating to supervisors and peers on a superficial work basis, the ALJ "sufficiently captured the essence" of that limitation by stating in the RFC that the plaintiff could "understand, remember and carry out simple instructions in a work-related setting and could interact with co-workers and supervisors, under routine supervision." 600 F. App'x at 620.

Similarly here, the ALJ did not repeat verbatim Dr. Lochner's opinion that Plaintiff could relate to supervisors and peers on a superficial work basis. But the RFCs limit Plaintiff to "work involving the performance of simple, routine tasks and simple work-related decisions," with "frequent interaction with supervisors." AR at 17, 23-24. Plaintiff's limitation to frequent interactions with supervisors is akin to the "routine

supervision" requirement in the course of performing simple work found "tantamount to the superficial interaction typically encountered in jobs involving such work." *Carver*, 600 F. App'x at 620. These significant limitations adequately reflect Plaintiff's ability to interact with supervisors on a superficial basis. *See Trujillo*, 2017 WL 2799981, at *9. The Court will not remand on this issue.

### C. The ALJ properly explained the weight he assigned to Ms. Rossi's opinions and his findings are supported by substantial evidence.

Joanne Rossi, LPCC (Licensed Professional Clinical Counselor), treated Plaintiff multiple times through 2015 and 2016. AR at 919, 927. She provided a Mental RFC Assessment on April 22, 2016, and another on January 9, 2017, diagnosing Plaintiff with major depression (moderate/ severe), non-specified cognitive disorder, and PTSD. AR at 919, 927. She also opined that Plaintiff had multiple marked limitations in her mental residual functional capacity. AR at 923-25, 932-34. The ALJ reviewed both Assessments (AR at 21, 24-25)[5] and assigned them limited weight (AR at 23, 25-26). Plaintiff now argues that the ALJ improperly weighed Ms. Rossi's opinion. *Doc. 18* at 21-24.

For claims filed before March 27, 2017,[6] an ALJ must "consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . ." 20

---

[5] Plaintiff asserts multiple times that ALJ Gontis did not mention or consider Ms. Rossi's 2017 opinion. *Doc. 18* at 23, 24. This is incorrect, as the ALJ did consider and weigh the 2017 Assessment when determining Plaintiff's second RFC. *See* AR at 24-26.

[6] The Social Security Administration revised many regulations, with revisions effective for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed her claim on January 28, 2015 (AR at 137, 277-78), the Court applies the prior versions of the regulations. *See Nunez v. Berryhill*, No. CIV 18-213 CG, 2019 WL 427328, at *6 (D.N.M. Feb. 4, 2019)

C.F.R. § 404.1527(b). Medical opinions are statements from acceptable medical sources, *id.*, which includes licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a) (effective Sept. 3, 2013 to Mar. 26, 2017); *see also* 20 C.F.R. § 404.1502 (effective June 13, 2011 to Mar. 26, 2017); SSR 06-03P, 2006 WL 2329939, at *1 (Aug. 9, 2006) (rescinded for claims filed on or after Mar. 27, 2017 by SSR 96-2P, 2017 WL 3928298 (Mar. 27, 2017)). Absent from that list is therapists, so they are considered not acceptable medical sources or other medical sources. *See* 20 C.F.R. § 404.1513(d)(1) (effective Sept. 3, 2013 to Mar. 26, 2017); *see also* SSR 06-03P, 2006 WL 2329939, at *2.

While Plaintiff acknowledges that Ms. Rossi, a Licensed Professional Clinical Counselor, is not an acceptable medical source, she also appears to characterize Ms. Rossi as a treating provider. *Doc. 18* at 21-22. However, "[o]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. 404.1502 . . . , whose medical opinions may be entitled to controlling weight." SSR 06-03P, 2006 WL 2329939, at *2.

Rather, Ms. Rossi is an other medical source, whose opinion the ALJ must consider and weigh based on a different standard than acceptable medical sources. *See Nunez*, 2019 WL 427328, at *6 (citing 20 C.F.R. § 404.1527(c)). When weighing evidence from an other medical source, an ALJ should consider six factors: the examining relationship, treatment relationship including length of the relationship,

---

("[T]he application of the Regulations in dispute . . . hinge on when the claim was filed, not when the ALJ issued his decision.").

frequency of examination, and nature and extent of the treatment relationship, supportability, consistency, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(f)(1) (referring to 20 C.F.R. § 404.1527(c)(1)-(6)). But, "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." *Id.* Instead, the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . ." 20 C.F.R. § 404.1527(f)(2); *see also* SSR 06-03P, 2006 WL 2329939, at *5-6; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).

ALJ Gontis found that although Ms. Rossi had a long treatment relationship with Plaintiff, her opinions were inconsistent with Plaintiff's other mental health care providers and Plaintiff's own self reports. AR at 23, 25-26. The ALJ cited specific doctor's findings, medical reports, and Plaintiff's reports to support his decision to afford limited weight to Ms. Rossi's opinion. AR at 23, 25-26. It is clear to the Court that the ALJ considered the Section 404.1527 factors and sufficiently explained the weight he assigned Ms. Rossi's opinion such that a subsequent reviewer can follow his reasoning.

Further, the ALJ's findings of inconsistency are supported by substantial evidence. While Ms. Rossi opined that Plaintiff had multiple marked limitations in her mental residual functional capacity, Plaintiff's treating neurologist, Dr. Mugavin, noted in December 2015 that Plaintiff was doing really well, was very happy, and had great references from dog-sitting. AR at 772. And Nurse Practitioner Stoller opined that

Plaintiff's depression was stable on Sertraline. AR at 788. Plaintiff also reported to Sage Neuroscience Center in June 2015 that she was depressed but was getting better. AR at 693. Through 2016 and early 2017, Ms. Stoller noted that Plaintiff denied any recent anxiety, nervousness, tension, mood changes, depression, or memory changes. AR at 976, 979, 982, 985. She also noted that Plaintiff was stable on Sertraline and her moods improved. AR at 977, 980, 983, 986. In February 2017, Dr. Mugavin noted that Plaintiff reported improvement of depression and PTSD symptoms over the last three months, with symptoms at a 0 on a scale of 0 to 10. AR at 1007.

Plaintiff essentially asks the Court to reweigh Ms. Rossi's opinion which it cannot. The Court must refrain from reweighing the record evidence; it may only review the ALJ's "decision to ensure that [he] applied the correct legal standard and that [his] findings are supported by substantial evidence." *Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *3 (D.N.M. Oct. 25, 2017) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Court will deny the Motion of this issue.

## V.    Conclusion

The Courts find that the Appeals Council did not err in rejecting review of additional evidence because Plaintiff failed to show good cause as to why she did not submit the evidence earlier. Additionally, the ALJ properly incorporated in the RFCs Dr. Lochner's opinion that Plaintiff can relate to supervisors on a superficial work basis, and properly explained the weight he assigned to Ms. Rossi's opinion.  However, the Court further finds that the RFCs do not adequately account for Plaintiff's marked limitations in interacting appropriately with the general public, as opined by Dr. Lochner. On remand,

the ALJ should consider that limitation into the RFCs, or explain his reasons for rejecting it.

Wherefore**,**

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*) is **granted** as described herein. The Court will enter concurrently herewith a final order of remand pursuant to Rule 58 of the Federal Rules of Civil Procedure.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent